# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OHIO

| | |
|---|---|
| **BANK OF AMERICA, N.A.** : <br> **100 North Tryon Street** : <br> **Charlotte, NC 28255** : <br> : <br> : <br> **Plaintiff,** : <br> : <br> **v.** : <br> : <br> **THE NOTRE DAME COLLEGE** : <br> **c/o Inglewood Associates LLC** : <br> **9242 Headlands Road** : <br> **Mentor, Ohio 44060** : <br> **Attn: Sam Steinhouse,** : <br> : <br> **Cuyahoga County Treasurer,** : <br> **Brad Cromes** : <br> **2079 East Ninth Street** : <br> **Cleveland, OH 44115** : <br> : <br> **Peter J. Corrigan** : <br> **3933 Kings Mill Run** : <br> **Rocky River, Ohio 44116,** : <br> : <br> **Justin Tisdale** : <br> **4321 Ardmore Road** : <br> **South Euclid, Ohio 44121,** : <br> : <br> **Len Barker** : <br> **10690 Locust Grove Drive** : <br> **Chardon, Ohio 44024,** : <br> : <br> **Defendants.** : | **CASE NO.** _____ <br><br> **JUDGE** _____ <br><br><br> **<u>COMPLAINT</u>** |

Plaintiff, Bank of America, N.A. ("<u>Plaintiff</u>" or "<u>Bank</u>"), by and through its undersigned counsel, hereby sues The Notre Dame College, (the "<u>College</u>") and Peter J. Corrigan, Justin

Tisdale and Len Barker (the "State Court Litigants[1]"; and together with the College and the Cuyahoga County Treasurer, the "Defendants"), and for its Complaint states as follows:

## Nature of Action

1. This is an action against the College for breach of contract and foreclosure. This is also an action against the State Court Litigants and the Cuyahoga County Treasurer for foreclosure. Plaintiff further seeks the appointment of a receiver related to all of the College's real and personal property, excluding the College's endowment funds and certain leased equipment.[2] Plaintiff's rights for the appointment of a receiver arise in connection with certain bond financing, further described below, issued for the benefit of the College.

## The Parties

2. Plaintiff, Bank of America, N.A., is a national banking association headquartered and with its principal place of business in North Carolina.

3. Defendant, The Notre Dame College, is a nonprofit corporation organized and with its principal place of business in Ohio.

4. The Cuyahoga County Treasurer, Brad Cromes ("Treasurer") has, or may claim to have, a lien encumbering the Real Property for taxes not yet due and payable. Bank does not

---

[1] The Plaintiff has retained Chicago Title to provide a Commitment for Title Insurance with a judicial commitment endorsement (the "Title Evidence") consistent with the requirements of Ohio Revised Code Section 2329.191(C). Chicago Title has included the State Court Cases filed by the State Court Litigants as exceptions in the Title Evidence requiring the State Court Litigants to be named as nominal defendants to this Complaint. The Plaintiff seeks no relief against the State Court Litigants other than to sell the Collateral and for the appointment of a receiver who will have authority to liquidate all assets of the College other than the endowment funds free and clear of the State Court Cases and any other actual or alleged interests.

[2] Plaintiff holds a perfected lien on and security interest all assets of the College, excluding any restricted endowment funds, unless and until any such restricted endowment funds become unrestricted endowment funds. Upon information and belief, the College does not have any unrestricted endowment funds. While the Plaintiff is not seeking the appointment of a receiver for any endowment funds, Plaintiff expressly reserves its lien on and security interest in any and all unrestricted endowment funds.

43653016.2/148413.00031
BOASAG2\002407\4932-1648-8462.v7

contest that any lien of the Treasurer for any unpaid real property taxes on the Real Property has priority over the Mortgages by virtue of O.R.C. §5721.10.

5. Defendants Peter J. Corrigan, Justin Tisdale and Len Barker are plaintiffs in a lawsuit currently pending in the Court of Common Pleas, Geauga County, Case No. 24-M-000857 (the "Geauga State Court Case").

6. Defendants Peter J. Corrigan, Justin Tisdale and Len Barker are also appellants in an appeal pending in the Eight District Court of Appeals, Case No. CA-24-114682, which is an appeal of the dismissal with prejudice of a lawsuit that was filed in the Court of Common Pleas, Cuyahoga County, Case No. CV-24-995727 (the "Cuyahoga State Court Case" and together with the Geauga State Court Case, the "State Court Cases").

**Jurisdiction and Venue**

7. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332 because the matter in controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs, and because there is complete diversity of citizenship between the parties.

8. Venue is appropriate pursuant to 28 U.S. Code § 1391(b) because the College and the property which would be the subject of the receivership discussed below are located in this State and this District.

9. Upon information and belief, the Treasurer is a local governmental entity located in Cuyahoga County, State of Ohio.

10. Upon information and belief, based upon representations made in the State Court Cases, the State Court Litigants are all residents of Ohio.

11. The Bank is a national banking association with its main headquarters in North Carolina. As such, it is a resident of North Carolina for diversity purposes.

- 3 -

**Factual Background**

**A. The Bond Financing & Transaction Documents**

12. The Ohio Higher Educational Facility Commission (the "Commission") issued $20,000,000 in aggregate principal amount of its State of Ohio Higher Educational Facility Revenue Bonds (The Notre Dame Defendant 2008 Project), (the "Bonds") for the purpose of providing funds to pay costs relating to the financing of certain educational facilities of the College.

13. The Bonds were reissued on or about February 28, 2017, and a copy of the Bonds are attached hereto as **Exhibit A**.

14. The Commission and U.S. Bank National Association, as Bond Trustee (the "Bond Trustee"), entered into that certain Trust Indenture dated August 1, 2008 (as amended, restated, modified, substituted, extended, and renewed from time to time, the "Indenture"), setting forth certain rights and duties of the Bond Trustee, holders of the Bonds, the College and Commission.

15. The Bank and the Commission entered into that certain Direct Purchase Agreement dated August 21, 2008 (the "Direct Purchase Agreement"), pursuant to which the Bank became the sole owner and holder of all of the Bonds. The Direct Purchase Agreement is attached as **Exhibit B**.

16. The Bank remains the sole owner and holder of all of the Bonds.

17. The Commission granted the Bond Trustee a security interest in all of the right, title and interest of the Commission in and to (1) the proceeds of the Bonds; (2) the Revenues (as that term is defined in the Indenture), any moneys and securities from time to time on deposit in the Revenue Fund, the Debt Service Fund, the Senior Lien Interest Account, the Senior Lien Principal Account, the Junior Lien Interest Account, the Junior Lien Principal Account, the Senior Lien Debt Service Reserve Fund, the Junior Lien Debt Service Reserve Fund, the FF&E Loan Fund, the

Insurance and Condemnation Award Fund, the Redemption and Improvement Fund, the Construction Fund, the Construction Account, the Basic Ground Rent Fund, the Supplemental FF&E and Pre-Opening Loan Fund, the Operating Deficit Loan Fund, the Subordinated Management Fees Fund (as each of the forgoing terms are defined in the Indenture) and any and all accounts and subaccounts in any of the foregoing; and (3) any moneys and securities from time to time on deposit in the Operating Account and the Capital Reserve Fund (as each of those terms are defined in the Indenture) and any and all accounts and subaccounts therein.

18. On or about May 21, 2025, the Bond Trustee assigned to the Bank certain of its remedies, rights and powers under the Bonds Documents (as defined below) to collect amounts due from the College and to otherwise act and/or exercise any remedies, rights and powers after the occurrence of an Event of a Default, including without limitation, the ability to enforce assignments and security interests granted to the Bond Trustee pursuant to the Bond Documents. A copy of the Assignment is attached hereto as **Exhibit C**.

19. As an inducement to the Bank to purchase the Bonds, the College and the Bank entered into that certain Master Covenant Agreement, dated as of August 1, 2008, (as amended, restated, modified, substituted, extended, and renewed from time to time, the "Covenant Agreement").

20. The obligations of the College under the Covenant Agreement are secured pursuant to that certain Security Agreement (attached hereto as **Exhibit D**) dated August 1, 2008 (as amended, restated, modified, substituted, extended, and renewed from time to time, the "First Security Agreement"), pursuant to which the College granted the Bank a first-priority lien on and security interest in (i) all unrestricted gross revenues, and (ii) all interest, dividends, cash,

instruments and other property payable or in exchange for the forgoing, and (iii) all proceeds, all as further described in the Security Agreement (the "Cash Collateral").

21. The First Security Agreement is governed by the laws of Ohio and the College submitted to the jurisdiction of any state or federal court sitting in Cleveland, Ohio, for disputes involving the First Security Agreement.

22. On November 27, 2023, the Bank recorded a UCC financing statement (attached hereto as **Exhibit E**) with the Ohio Secretary of State perfecting its security interests under the First Security Agreement.

23. The Bonds, Direct Purchase Agreement, Covenant Agreement, First Security Agreement, the Mortgages (as defined below) and all other documents evidencing, securing or executed in connection with the Bonds, as the same may be amended, restated, modified, substituted, extended and renewed from time to time, shall be referred to as the "Bond Documents."

**B. The SWAP Transaction**

24. The Bank and the College also entered into a certain Interest Rate Swap Transaction (the "SWAP Transaction"), pursuant to a certain confirmation that is subject to, supplements and forms a part of an agreement in the form of the ISDA 2002 Master Agreement (collectively, including all schedules, annexes and exhibits thereto, the "Master Agreement").  The Master Agreement, and any document, instrument, or agreement relating to the SWAP Transaction or any other interest rate swap transaction, forward rate transaction, interest rate cap, floor or collar transaction, any similar transaction, any option to enter into any of the foregoing, and any combination of the foregoing, which agreement may be oral or in writing, each as amended from time to time, are sometimes collectively referred as the "SWAP Documents".

43653016.2/148413.00031
BOASAG2\002407\4932-1648-8462.v7

25. The SWAP Transaction was terminated on December 31, 2023, and the College failed to pay to the Bank the amounts due under the SWAP Documents. A copy of the SWAP Termination Notice is attached hereto was **Exhibit F**.

C. **Mortgages**

26. The obligations of the College under the Bond Documents, the Covenant Agreement, the First Security Agreement and the SWAP Transaction are also secured by:

(i) that certain Open-End Mortgage (Leasehold), Assignment of Leases and Rents and Fixture Filing dated August 1, 2008, and recorded in the Cuyahoga County records on August 21, 2008 as Instrument No. 200808210008, as amended by that certain First Amendment and Modification of Open-End Mortgage (Leasehold), Assignment of Leases and Rents and Fixture Filing dated February 23, 2017, and recorded in the Cuyahoga County records on March 6, 2017 as Instrument No. 201703060062 (collectively, the "First Mortgage") granting a first priority lien on and security interest in the real and personal property described therein, attached hereto as **Exhibit G**;

(ii) that certain Open-End Mortgage, Assignment of Rents, Security Agreement and Fixture Filing dated February 28, 2017, and recorded in the Cuyahoga County records on March 6, 2017 as Instrument No. 201703060063 (the "Second Mortgage") granting a first priority lien on and security interest in the real and personal property described therein, attached hereto as **Exhibit H**; and

(iii) that certain Open-End Mortgage, Assignment of Rents, Security Agreement and Fixture Filing dated February 28, 2017, and recorded in the Cuyahoga County records on March 6, 2017 as Instrument No. 201703060064 (the "Third

- 7 -

Mortgage") granting a first priority lien on and security interest in the real and personal property described therein, attached hereto was **Exhibit I** (the First Mortgage, the Second Mortgage and the Third Mortgage, each as amended, restated, modified, substituted, extended, and renewed from time to time, are collectively, the "Mortgages").

27. Pursuant to the Mortgages, the Bank was granted a first lien on, and security interest in, the real property known as (a) 4545 College Road, South Euclid, Ohio 44121; (b) 4602 College Road, South Euclid, Ohio 4412; (c) 1899 Lawnway Road, South Euclid, Ohio 44121; (d) 1887 Lawnway Road, South Euclid, Ohio 44121; and (e) 1857 Lawnway Road, South Euclid, Ohio 44121, also known as 1857 South Green Road, South Euclid, Ohio 44121 (collectively, the "Real Property") and all improvements on, fixtures to, and all rents, proceeds and profits of the Real Property, as further set forth in the Mortgages (collectively, the "Real Property Collateral").

### D. Default and Winddown

28. By April, 2017, the College was in default under the Bond Documents. Since that time, and for approximately seven (7) years, while under no obligation to do so, the Bank continued to work with the College by entering into various amendments to the Bond Documents and waiving certain defaults.

29. On or about February 29, 2024, the Board of Trustees of the College issued a press release, attached hereto as **Exhibit J**, announcing that the College would conclude its in person academic instruction at the end of the Spring Semester 2024. The College explained in the press release, that, like many small higher education institutions across the country, the College has faced long-standing challenges related to declining enrollment, a shrinking pool of college-aged students, rising costs and significant debt.

- 8 -

30. At the conclusion of the Spring Semester, 2024, and after graduation, the College ceased to operate as a college and commenced a voluntary winddown of its affairs and liquidation of the Collateral (the "Winddown and Collateral Liquidation"), which was to involve the sale of substantially all Real Property, Personal Property (as defined below), the collection of accounts and the closing of the College's campus.

31. In order to fund the Winddown and Collateral Liquidation, the Bank and the College entered into a Post Default Liquidation and Funding Agreement dated June 30, 2024 (as subsequently amended and modified, the "Liquidation and Funding Agreement"), attached hereto as **Exhibit K**, pursuant to which the Plaintiff made a non-revolving line of credit facility (the "Line of Credit") in the amount of Two Million Dollars ($2,000,000.00) available to the College, to be used by the College solely to fund the Winddown and Collateral Liquidation, including the security and maintenance of the College's campus.

32. In order to induce the Bank to enter into the Liquidation and Funding Agreement, the College executed that certain Security Agreement (attached hereto as **Exhibit L**) dated June 28, 2024 (as amended, restated, modified, substituted, extended, and renewed from time to time, the "Second Security Agreement"), pursuant to which the College granted the Bank, to secure all obligations due and owing to the Bank under the Bond Documents, the SWAP Transaction, the Line of Credit and the Liquidation and Funding Agreement, a lien on and security interest in all assets of the College, including all accounts, but excluding any restricted endowment funds, unless and until any such restricted endowment funds become Released Endowment Funds, as that term is defined in the Liquidation and Funding Agreement (the "Personal Property," and, together with the Real Property Collateral, the "Property Collateral").

- 9 -

33. The Property Collateral and the Cash Collateral, but not including the College's endowment funds, are the "Collateral."

34. The Bank perfected its lien on the Personal Property by filing a UCC-1 filing with the Ohio Secretary of State on July 1, 2024, a copy of which is attached hereto as **Exhibit M**.

35. The Second Security Agreement is governed by the laws of Ohio and the College submitted to the jurisdiction of any state or federal court sitting in Ohio, for any action or suit against the College arising out of or relating to the Second Security Agreement.  See Ex. L ¶ 7(e).

36. In the Second Security Agreement, upon an event of default, the College expressly consented to the appointment of a receiver for the Personal Property, and agreed not to oppose the appointment of a receiver.  Ex. L, ¶ 6(m).

37. Pursuant to the Liquidation and Funding Agreement, the College acknowledged and agreed that as of June 30, 2024, it was in default under the Bond Documents as follows:

> (i) the College failed to maintain, on a consolidated basis, at all times, a Debt Service Coverage Ratio of at least 0.90 to 1.00 for the fiscal quarter ending June 30, 2023 as required by Section 2.30(a) of the Covenant Agreement, (ii) the College failed to maintain, on a consolidated basis, at all times, Debt Service Coverage Ratio of at least 1.00 to 1.00 for the fiscal quarter ending September 30, 2023 as required by Section 2.30(a) of the Covenant Agreement, (iii) the College failed to maintain, on a consolidated basis, at all times, Debt Service Coverage Ratio of at least 1.00 to 1.00 for the fiscal quarter ending December 31, 2023 as required by Section 2.30 (a) of the Covenant Agreement and (iv) the College has ceased normal business operations, which constitutes a default under the [Bond] Documents.

Liquidation and Funding Agreement, Ex. K, ¶ J.

38. Additionally, the College has failed to make payments due under the Bond Documents, and the SWAP Transaction.

39. The Liquidation and Funding Agreement provided that the College would proceed diligently with the sale of the Real Property. The sale of the Real Property was required to close by October 31, 2024 unless such deadline was extended in writing.

40. The Liquidation and Funding Agreement also provided that the College would proceed diligently with the sale of the Personal Property.

41. As of the date of this filing, there has been no sale of the Real Property or the Personal Property. As such, the College is in default under the Liquidation and Funding Agreement.

42. Pursuant to the Liquidation and Funding Agreement, the initial availability period for borrowing under the Line of Credit expired on December 15, 2024.

43. On January 27, 2025, the College and the Plaintiff executed an amendment to the Liquidation and Funding Agreement (the "First Amendment to Liquidation and Funding Agreement") which did not waive any defaults, but provided the College with additional time, until March 15, 2025, to borrow under the Line of Credit, while it continued to try to sell the Real Property and Personal Property. See Ex. K.

44. The College expressly consented to the appointment of a receiver for the Collateral in the First Amendment to Liquidation and Funding Agreement. Ex. K, ¶ 3.

45. On April 23, 2025, the College and the Plaintiff executed a second amendment to the Liquidation and Funding Agreement (the "Second Amendment to Liquidation and Funding Agreement") which did not waive any defaults, but provided the College with additional time, until the earlier of (a) the date of the entry of an order appointing a receiver or other trustee for the Real Property and Personal Property, or (b) July 1, 2025, to borrow under the Line of Credit for

the purpose of securing and maintaining the College's campus until a receiver is appointed. See Exhibit K.

### E. The State Court Cases

46. The Cuyahoga State Court Case does not name the College or the Bank as defendants. On November 22, 2024, the Cuyahoga Common Pleas Court granted the motion of defendant for judgment on the pleadings, on the basis, among other bases, that the State Court Litigants lacked standing to bring their claims. The Judgment against the State Court Litigants in the Cuyahoga State Court Case currently is on appeal.

47. In the Geauga State Court Case, which also does not name the College or the Bank as defendants, the State Court Litigants have sought, among other relief, to enjoin any action to sell assets of the College and to impose a constructive trust on any assets sold during the winddown.

48. On April 3, 2025, six of the defendants in the Geauga State Court Case filed a Motion for Judgment on the Pleadings, a copy of which is attached hereto as **Exhibit N**, seeking a dismissal of the Geauga State Court Case, on the basis that the claims are barred by the doctrine of res judicata and the State Court Litigants lack standing to bring the claims.

49. The Bank has retained a title company to provide Title Evidence consistent with the requirements of Ohio Revised Code Section 2329.191(C). The Title Evidence identifies the State Court Cases as exceptions on the Title Evidence.

50. As such, the plaintiffs in the State Court Cases have been included in this action as nominal defendants to ensure the Receiver can sell the Collateral free and clear of any alleged interest of the State Court Litigants. The Bank seeks no other relief against the State Court Litigants.

### F. Authority to Appoint Receiver

51. The College is in default under the Bond Documents, the SWAP Documents and the Liquidation and Funding Agreement.

52. The Covenant Agreement and Mortgages expressly provide that the Plaintiff can appoint a receiver in the event of default. See, Covenant Agreement, attached hereto as **Exhibit O**, § 4.08; First Mortgage, Ex. G, § 21; Second Mortgage and Third Mortgage, Ex. H & I, Sec. 6.3(b).

53. In addition, the College expressly consented to the appointment of a receiver for the Real Property and Personal Property in the First Amendment to Liquidation and Funding Agreement. Ex. K, ¶ 3.

54. Further, in the Second Security Agreement, upon an event of default, the College expressly consented to the appointment of a receiver for the Personal Property, and agreed not to oppose the appointment of a receiver. Ex. L, ¶ 6(m).

### COUNT I
### (Breach of Contract)

55. Plaintiff incorporates by reference the allegations in the preceding paragraphs as if fully set forth herein.

56. The College is in default under the Bond Documents, the SWAP and the Liquidation and Funding Agreement, as amended.

57. The obligations under the Bond Documents were accelerated pursuant to the terms of the Second Amendment to Liquidation and Funding Agreement.

58. As of May 20, 2025, the amounts due under the Bond Documents, not including legal fees and expenses, are as follows:

| Principal | $14,580,000.00 |

| Interest ($2,804.15 per diem) | 965,679.46 |
| --- | --- |
| Transaction Fee Under Covenant Agreement | 2,062,544.66 |
| **TOTAL** | **$17,608,224.12** |

59. As of May 20, 2025, the amounts due under the Line of Credit are as follows:

| Principal | $1,660,754.64 |
| --- | --- |
| Interest | 65,783.30 |
| **TOTAL** | **$1,726,537.94** |

60. As of May 20, 2025, the amounts due under the SWAP Documents are as follows:

| Principal | $1,083,924.00 |
| --- | --- |
| Interest ($171.76 per diem) | 98,140.33 |
| **TOTAL** | **$1,182,064.33** |

## COUNT II
### (Foreclosure of Mortgages and Security Interest)

61. Plaintiff incorporates by reference the allegations in the preceding paragraphs as if fully set forth herein.

62. Because Borrower is in default under the Bond Documents (including the Mortgages, the Covenant Agreement and the SWAP), the Second Security Agreement and the Liquidation and Funding Agreement (as amended), the College is in default under the Mortgages entitling Bank to foreclose against the Real Property Collateral and Personal Property, as more particularly described in the Mortgages and the First and Second Security Agreements.

63. Pursuant to the terms of the Mortgages, the First and Second Security Agreements, and because the Bond Documents (including the Mortgages, the Covenant Agreement and the SWAP), the Second Security Agreement and the Liquidation and Funding Agreement (as amended) are in default, Bank has the rights and remedies of a secured party under the Uniform Commercial Code as adopted by the State of Ohio with respect to the Real Property Collateral and Personal Property and other real and personal property to which Bank's mortgage lien and security interest attach.

43653016.2/148413.00031
BOASAG2\002407\4932-1648-8462.v7

64. All conditions precedent to Bank's claims under the Bond Documents, the Second Security Agreement and the Liquidation and Funding Agreement (as amended) have been performed, have occurred, and have been excused.

65. The interest in and to the Real and Personal Property currently is vested in the College, but whatever right, title, estate or interest the College or any other Defendant may have or claim in and to the interest in the Real and Personal Property is subject to and subordinate to Bank's to the mortgage liens and security interests of the Mortgages and First and Second Security Agreements in and to the Real and Personal Property as provided in the Title Evidence..

66. The Treasurer has, or may claim to have, a lien encumbering the Real Property for taxes not yet due and payable. Lender does not contest that any lien of the Treasurer for any unpaid real property taxes on the Real Property has priority over the Mortgage by virtue of O.R.C. §5721.10.

67. O.R.C. §1309.604 authorizes the foreclosure of both personal property and real property "in accordance with the rights with respect to real property."

## CLAIM III
### (Assignment of Rents)

68. Bank incorporates by reference the allegations in the preceding paragraphs as if fully set forth herein.

69. Because Borrower is in default under the Bond Documents (including the Mortgages, the Covenant Agreement and the SWAP), the Second Security Agreement and the Liquidation and Funding Agreement (as amended), the College's license to collect rents has been revoked.

70. Banks's right to all rents, profits, and other income as described in the Mortgages has become absolute.

## COUNT IV
### (Appointment of Receiver)

71. Plaintiff incorporates by reference the allegations in the preceding paragraphs as if fully set forth herein.

72. The College is in default under the Bond Documents (including the Mortgages, the Covenant Agreement and the SWAP), the Second Security Agreement and the Liquidation and Funding Agreement (as amended).

73. The Mortgages, Covenant Agreement and Second Security Agreement provide for the appointment of a receiver for the Collateral upon default.

74. Further, the College has expressly agreed to the appointment of a receiver for the Collateral in the Liquidation and Funding Agreement (as amended).

WHEREFORE, Plaintiff, Bank of America, N.A., respectfully demands judgment as follows:

1. On Claim I, demands entry of a money judgment against Defendant, Notre Dame College in an amount not less than $20,516,826.39.

2. On Claim II, that the Mortgages secure the amounts due and owing to Bank under the Bond Documents, the Second Security Agreement and the Liquidation and Funding Agreement (as amended); and

> (a) That Bank be found and declared to have a first lien upon the Real Property and Personal Property as described in the Mortgages and Second Security Agreement, subject only to the Treasurer's lien for unpaid taxes and assessments;
>
> (b) That all named defendants and others claiming an interest in the Real Property and Personal Property be required to set up their interests in the Real Property and Personal Property or be forever barred from asserting any interest in the Real Property and Personal Property;
>
> (c) That the equity of redemption of all Defendants, and any and all persons claiming through them, be foreclosed;

43653016.2/148413.00031
BOASAG2\002407\4932-1648-8462.v7

  (d) That all liens on the Real Property and Personal Property be marshaled and their priority determined according to applicable law;

  (e) That all property, real or personal, tangible or intangible, described in the Mortgages be ordered sold, according to law, free and clear of all claims and interests of the Defendants in this action or any other person, including by a private selling officer or receiver; and

  (f) That Bank be paid out of such sale.

3. On Claim III, that Lender is entitled to exercise its rights under the Mortgages with respect to the Assignment of Rents.

4. On Claim IV, that the Court appoint of a receiver for all of the Collateral, except for the College's endowment funds.

5. That Lender recover its expenses incurred in pursuing this action including its reasonable attorneys' fees and other collection costs as well as the costs of this action.

6. That pending the appointment of a receiver, the Court alternatively require that all rents, issues, proceeds, profits, revenues, security deposits, accounts, and account receivables derived from the ownership or operation of the Real Property, or collected thereafter, be used solely to pay the reasonable expenses to protect, preserve and operate the Real and Personal Property, but only to the extent such expenses are approved in writing by Lender or by further order of this Court, and that all such excess rents, issues, proceeds, profits, revenues, accounts, and accounts receivable be paid to Lender.

7. That Plaintiff be granted such other equitable relief as may be proper and necessary.

Respectfully submitted,

*s/Nancy A. Valentine*
Amanda J. Martinsek (0058567)
Nancy A. Valentine (0069503)
Miller Canfield Paddock and Stone, P.L.C.
1100 Superior Avenue East, Suite 1750
Cleveland, Ohio 44114
Phone: 216.716.5041/216.716.5040
Email: martinsek@millercanfield.com
         valentine@millercanfield.com

-and-

Emily K. Devan (pro hac vice to be filed)
Linda V. Donhauser (pro hac vice to be filed)
MILES & STOCKBRIDGE P.C.
100 Light Street
Baltimore, Maryland 21202
(410) 385-3413 (ph)
edevan@milesstockbridge.com
ldonhauser@milesstockbridge.com

*Attorneys for Plaintiff,*
*Bank of America, N.A.*