## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO

| | | |
|---|---|---|
| **BANK OF AMERICA, N.A.,** | : | |
| | : | |
| **Plaintiff,** | : | **CASE NO. 1:25-cv-1061** |
| | : | |
| **v.** | : | **JUDGE** _____ |
| | : | |
| **THE NOTRE DAME COLLEGE,** | : | |
| **PETER J. CORRIGAN,** | : | |
| **JUSTIN TISDALE,** | : | |
| **LEN BARKER, and** | : | |
| **CUYAHOGA COUNTY TREASURER,** | : | |
| | : | |
| **DEFENDANTS** | : | |

## ORDER APPOINTING AURORA MANAGEMENT PARTNERS AND DAVID BAKER AS RECEIVER FOR CERTAIN PROPERTY OF THE NOTRE DAME COLLEGE

Upon consideration of Plaintiff's Motion for Appointment of Aurora Management Partners and David Baker as Receiver for Certain Property of The Notre Dame College (the "Motion"), with the consent of the College and considering any opposition to the Motion and it appearing that there is good cause therefore, the Court finds:

A. That the Plaintiff[1] is the sole owner and holder of the $19,090,000 in aggregate principal amount State of Ohio Higher Educational Facility Revenue Bonds (the "Bonds") issued on or about August 1, 2008, and reissued on or about February 28, 2017, for the purpose of providing funds to pay costs related to certain educational facilities of the College;

B. That events of default have occurred and currently exist under the Bond Documents, the SWAP Agreement and the Winddown and Liquidation Agreement;

C. That the Plaintiff has a perfected lien on the Collateral, including a perfected, first-priority lien on the Real Property Collateral;

---

1 All capitalized terms not otherwise defined herein shall have the meanings set forth in the Motion.

D.      That the Plaintiff is seeking the immediate appointment of a receiver pursuant to applicable law and the terms and conditions of the Bond Documents, the Mortgages and the Winddown and Liquidation Agreement;

E.      That a receiver is necessary and appropriate as the value of Collateral will decline and may be irreparably lost if it is not maintained and managed while an appropriate sales process is conducted;

F.      That David Baker and Aurora Management Partners have the necessary experience and expertise to serve as receiver for the Collateral.

## ORDER APPOINTING RECEIVER

This Court has jurisdiction over this matter pursuant to 28 U.S.C. §1332 because the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs, and the parties hereto are of diverse citizenship. Proper and adequate notice of the hearing on the Motion was given to the Defendants.  This Court has ancillary jurisdiction of the request to appoint a receiver because such relief is substantially related to the claims of Plaintiff set forth in the Complaint.

Based on the Motion and  the  facts  in  support of the Motion, the supporting Declaration of Kelly Werbecki, and other facts of which the Court may take judicial notice, and pursuant to Federal Rule of Civil Procedure 66, there is no just reason for delay as to the Motion and finds it to be well taken and, therefore, grants the same, and for good cause shown, it is  therefore ORDERED, ADJUDGED, and DECREED that:

A.      David Baker and Aurora Management Partners are appointed as the receiver (the "Receiver") for the Collateral, as defined in the Motion, and are authorized to take any and all actions as are necessary and appropriate to carry out their powers and duties as Receiver under 28 U.S.C. §§ 754, 959 and 1692, Rule 66 of the Federal Civil Rules of Procedure, and Rule 66.1 of

the Local Rules for the United States District Court for the Northern District of Ohio, this Court's

inherent powers, and as ordered by this Court, including the authority to:

i. Reasonably prevent waste, and to preserve, secure, manage, maintain and safeguard the Collateral and all other forms of property to which the Receiver is entitled to take possession and control under this Order;

ii. Take possession or control of all existing bank accounts, cash and funds belonging to or for the benefit of the College, including without limitation the accounts maintained at PNC Bank (the "PNC Bank Accounts") and the accounts maintained at Bank of America (the "Bank of America Account"; and together with the PNC Accounts, collectively, the "Accounts"), including taking such actions outlined in Subparagraph (iii) below.  For the avoidance of doubt, the definition of Accounts shall not include the endowment funds or any accounts where endowments funds are deposited. The Receiver shall have control of the Accounts, the Accounts shall remain open and the Accounts shall remain under the name of The Notre Dame College. All depository banks are expressly prohibited from closing the Accounts and expressly prohibited from requiring the Receiver to open new accounts (or put the Accounts) under the Receiver's name with Receiver's TIN;

iii. With respect to the Accounts,  take any such actions necessary to control the Accounts, including, without limitation: (i) modify the authorized signors on the accounts to those persons identified by the Receiver; (ii) delete any signors to the Accounts as requested by the Receiver; (iii) continue to use the College's TIN with respect to such Accounts, (iv) in Receiver's sole discretion, open one or more new bank accounts at Bank of America (under the College's name and using its TIN) and/or (v) sweep any funds in the  PNC Accounts into the Bank of America Account on a daily basis as directed by Receiver. Neither the College nor its agents, representatives or affiliates shall have access to such Accounts, cash and funds belonging to or for the benefit of the College, except for the endowment funds. Depository banks, upon instruction from the Receiver, shall not allow any check or other transfer (wire, ACH or otherwise) to clear such bank account to the extent that such check or other transfer (wire, ACH transfer or otherwise) was initiated but not yet cleared as of the date of entry of the Receivership Order;

iv. Administer the Collateral including executing contracts related to the Collateral, the duration and terms of which are reasonable and customary for the type of use involved;

v. Without further Court order with the written consent of the Plaintiff, or if Plaintiff does not consent, upon further Court order (after notice and an opportunity to object by Plaintiff) retain, employ, or continue, through the College or others, including through any entity currently employing such persons and consistent with any applicable existing agreements, the employment of all custodians, janitors, maintenance workers, repairmen/contractors, assistants, agents, accountants, direct

36139513.2
BOASAG2\002407\4900-9916-3961.v4

support personnel and other professionals and employees, construction managers, general contractors, subcontractors, architects, engineers, consultants, title companies, environmental consultants, asset managers, attorneys, securities companies, property managers, administrative support (such as management, billing, and collection personnel), reasonably deemed necessary, appropriate, or desirable to assist the Receiver in diligently executing the duties imposed upon the Receiver by this Order including, but not limited to the maintenance of the Collateral and to compensate or continue the compensation of such persons or entities;

vi.     To the extent itemized in the budgets attached as exhibits to the Liquidation and Funding Agreement as may be amended from time to time and approved by the Plaintiff (collectively, the "Approved Budgets"), make such payments and disbursements in the ordinary course of business as may be necessary and proper for the maintenance, security and preservation of the Collateral, including: (i) paying ordinary operating expenses, including utilities, rents, and other expenses of management, including, without limitation, compensation of all persons employed by the Receiver as permitted hereunder, to the extent incurred on or after the date of the Receiver's appointment; (ii) purchasing all necessary cleaning and other supplies, equipment, furniture and furnishings to the extent necessary on or after the date of the Receiver's appointment; and (iii) contracting for all necessary services at the Real Property Collateral on or after the date of the Receiver's appointment;

vii.    Maintain appropriate and adequate insurance, continue any current policies in place, and with the prior written consent of the Plaintiff, to purchase further insurance as the Receiver deems appropriate, to the extent itemized in the Approved Budgets;

viii.   Pay all current, past due, and future real estate taxes, property taxes, and any other taxes and assessments against any of the Collateral, to the extent itemized in the Approved Budgets;

ix.     Make all repairs, declarations, renewals, replacements, alterations, additions, betterments, and improvements in connection with the Collateral as may seem judicious to the Receiver, to the extent itemized in the Approved Budgets or otherwise approved in writing by the Plaintiff;

x.      Subject to the Plaintiff's prior written consent and upon Court approval, negotiate and facilitate the orderly sale or other disposition of the Collateral and to do all acts and things necessary or advisable in connection with such sale or other disposition including, but not limited to, conducting an auction or other disposition of the Collateral, and to hire one or more agents to carry out such disposition;

xi.     Maintain all permits, licenses, certifications, and other authorizations as required by Federal, State and Local law to the extent necessary to liquidate the Collateral;

xii.   Prepare and file any tax returns arising in connection with the Collateral and the operation of the Collateral as may be required by law.  The Receiver shall not be responsible for the preparation and filing of any tax returns for the College or its affiliates, (including income, personal property, commercial activity, gross receipts, sales and use, or other tax returns) other than to provide the College with information in the Receiver's possession that may be necessary for the College or its affiliates to prepare and file their returns.  The College shall provide to the Receiver any information needed to file any tax returns for the Collateral;

xiii.   Analyze, and determine the best approach to maximize value from the Collateral for the benefit of Plaintiff and the College's creditors;

xiv.   Collect and control the rents, issues, accounts receivable, insurance claim proceeds, real estate tax refunds, utility deposits, security deposits, and profits from or related, in any way, to the Collateral from any time period, and to receive all proceeds from past operations of the College, including without limitation security deposits, rents, accounts receivable, insurance claim proceeds, real estate tax refunds, utility deposits, security deposits, and earnest money deposits presently in the possession or control of the College and/or their agents and the Receiver, and deposit the foregoing into the Bank of America Account upon which Receiver and/or Receiver's designated agent shall be the sole authorized signatory;

xv.   The Receiver shall cause to be paid, on behalf of the receivership estate, all necessary fees and expenses, not to exceed the amounts permitted by the Approved Budget and any variances approved by Plaintiff (the "Variances"). To the extent cash flow is insufficient to pay such expenses, without further order of this Court, the Receiver is authorized, on behalf of the receivership estate, to request funds from Plaintiff pursuant to this Order as necessary to pay such amounts. The Receiver shall be permitted to exceed the amounts set forth in the Approved Budget to pay categories of expenses listed in the Approved Budget to the extent that such payments would not cause the aggregate expenditures to exceed the Variances;

xvi.   Use cash collateral of the College, and borrow under the Line of Credit from the Plaintiff as may be necessary for the maintenance and/or preservation of the Collateral, and to amend, modify and restate the terms of the Liquidation and Funding Agreement, Approved Budgets and Line of Credit, on terms acceptable to the Receiver and the Plaintiff, and to grant security interests, mortgages and liens to the Plaintiff in addition to and without prejudice to the preexisting security interests, mortgages and liens of the Plaintiff on the assets of the College;

xvii.   The Receiver is authorized to issue one or more Receiver's certificates of indebtedness ("Certificates") to evidence such debt and is authorized to execute such other documents as requested by Plaintiff evidencing the advance of such funds (the "Lending Documents"). Any such funds advanced by Plaintiff and evidenced by the issuance of Certificates shall be considered advances made under

the Lending Documents between the Receiver and Plaintiff and shall be added to the indebtedness evidenced by the Line of Credit. The obligations under each Certificate shall be a super-priority administrative claim against the receivership estate superior to all other claims against the receivership estate (other than fees and expenses of the Receiver and his professionals) and shall be secured by a perfected first-priority security interest in and lien on the Collateral and all of the assets of the receivership estate;

xviii.       Reimburse the Plaintiff, as a super priority administrative expense to be paid prior to any other distributions (other than fees and expenses of the Receiver and his professionals), from the sale proceeds of any Collateral, for any use of Cash Collateral and for any advances made by the Plaintiff under the Line of Credit or otherwise for all costs of this receivership, including, but not limited to, the fees and costs of the Receiver, the Receiver's counsel, the costs of securing and maintaining the Collateral, the fees and costs of any professionals hired by the Receiver, the fees and costs incurred by the Plaintiff's counsel, taxes, insurance premiums and any other reasonable costs incurred by the Receiver during the pendency of this receivership;

xix.       As required by 28 U.S.C. §754, or with the prior written consent of Plaintiff, institute ancillary proceedings in this State or other States as are necessary to preserve and protect the Collateral or any assets of the receivership estate;

xx.       Conduct discovery, provide notice, pursue claims, cooperate, negotiate, and otherwise take all steps necessary to recover any assets of the College in the hands of others;

xxi.       Do all things reasonable and necessary to promote the sound and reasonable financial management of the Collateral;

xxii.       Without further Court order with the written consent of the Plaintiff, or if Plaintiff does not consent, upon further Court order (after notice and an opportunity to object by Plaintiff), hire or retain any agents (including, without limitation, the Receiver's affiliates) necessary or appropriate to perform any of the duties listed herein without further approval of this Court, including, but not limited to, accountants, attorneys, environmental consultants and personnel, brokers, property managers, maintenance personnel, and/or security personnel;

xxiii.       Defend or institute and prosecute suits or summary proceedings related to the Collateral or the duties imposed upon the Receiver by this Order, including, but not limited to, proceedings for the collection of accounts receivable, income, and other amounts, or otherwise related to the Collateral or the duties imposed upon the Receiver by this Order;

xxiv.       Subject to the prior written consent of Plaintiff or Court order (after notice and an opportunity to object by Plaintiff), pay all or a portion of the outstanding obligations

to creditors incurred in arm's length transaction who, prior to the entry of this Order, supplied materials, business supplies, and/or labor to or for the benefit of the Collateral, but only to the extent the Receiver shall determine, in its sole judgment, that it is prudent to do so in order to maintain the Collateral and provided that the payment of such obligations are permitted by the Approved Budget and any Variances.   For the avoidance of doubt, the Receiver is not liable for and is not obligated to pay any debts, claims or other obligations relating to the Collateral or incurred before the date of entry of the appointment order and no claims, debts, liabilities, risks or obligations of any type shall be the personal risk or obligation of the Receiver or its agents or representatives; and

xxv.     Subject to the prior written consent of Plaintiff or Court order (after notice and an opportunity to object by Plaintiff), take such other actions as may be reasonably necessary to secure, maintain and liquidate the Collateral, so long as such actions are not in contravention of this Order or as otherwise authorized by the Court.

B.      The College, its trustees, principals, employees, managers and agents, including

any management companies shall:

i.      Cooperate with and assist the Receiver including, without limitation, execution of all documents reasonably required by the Receiver;

ii.     Within two (2) business days from entry of an order granting this Motion, turnover to the Receiver all of the Collateral, cash on hand, security deposits, proceeds or awards of any kind, benefits accounts and federal and state tax identification numbers, records and documents relating to the business operations, management, maintenance and improvement of the Collateral and the College (including, without limitation, all licenses, permits and other land use entitlements, approvals and files, insurance policies, floor plans, construction contracts, surveys, drawings, engineering reports, environmental reports, maintenance and improvement contracts, warranties, management contracts, home office contracts, all furniture, fixtures and equipment, all inventories, banking and financial records, leases, and all other miscellaneous contracts and documents), and any other information which is necessary for the Receiver to perform the Receiver's duties as described herein;

iii.    Surrender and deliver immediately to the Receiver all keys or combinations to locks to open or gain access to all parts of the Real Property Collateral and improvements and any passwords or codes used to access computers, other equipment, or on-line accounts, including all user ID's and passwords and the Receiver is authorized to make copies of such keys, access cards, and other means to access locked areas relating to the Collateral for his/its use in the administration of the receivership estate; and

        iv.      Surrender and deliver immediately to the Receiver the names of all persons who serve as College's principal contacts at its financial institutions, accountants, counterparties to contracts and leases, and any and all other persons who have possession, custody, or control of the Collateral or information relating to the Collateral.

C.      The Receiver shall not enter into any service contracts affecting the Collateral having (i) a total annual compensation of more than $25,000, and (ii) a term which cannot be canceled (without premium or penalty) upon the termination of the receivership or upon thirty (30) days' notice, whichever is earlier ("Material Contracts"), except with prior order of this Court (after notice and an opportunity to object by Plaintiff) or the written consent of Plaintiff.  In submitting such Material Contracts to the Court for its approval or to Plaintiff, the Receiver shall disclose any affiliate relationship, or pecuniary interest, that the Receiver may have with or in such contracting party. The Receiver may, in the Receiver's sole business judgment and without the prior approval of the Court but with the prior written consent of Plaintiff, negotiate, enter into, or modify any non-Material Contracts, and modify or terminate any and all contracts (Material Contracts and non-Material Contracts) the College may have with any managers, brokers, or other agents or parties with respect to the Collateral, notwithstanding anything contained in such contracts or agreements to the contrary.

D.      The Receiver shall prepare and file in the Court on or before sixty (60) days from the date the Receiver takes possession, a full and detailed inventory of the Collateral or any other personal property, and intangible property, assets, and effects of every nature situated within or about the Collateral of which the Receiver is hereby given custody.

E.      The Receiver shall prepare, on or before the fifteenth (15th) day after the end of each second month, commencing on July 15, 2025, so long as the Collateral shall remain in the Receiver's possession or care, a full and complete report, under oath, setting forth for the most

recent period since the last report, all receipts and disbursements and the cash balance, and reporting all changes in the assets in Receiver's charge, or claims against the assets, that have occurred during the preceding two months.  The Receiver is directed to file all reports with this Court. The Receiver is directed to serve a copy of each report on counsel of record for the Plaintiff.

       F.       At Receiver's option and discretion, with the prior written consent of Plaintiff and without further order of the Court, the Receiver may engage a broker ("Broker") to market some or all of the Collateral for sale. The Receiver, with the prior written consent of Plaintiff, may enter into one or more transactions for the sale of some or all of the Collateral, subject to approval of this Court after notice to the issuer of the Bonds, the Bond trustee, governmental entities having jurisdiction over the Collateral and other lienholders of record. In connection with the marketing and sale of the Collateral: (a) the Receiver is authorized and directed to cause the Collateral to be listed for sale at any price the Receiver determines, in the exercise of its business judgment, to be an appropriate list price, subject to the prior written consent of Plaintiff; (b) the Receiver is authorized and directed to assist in marketing the Collateral for sale; (c) the Receiver shall prepare marketing reports not less than monthly which shall be provided to Plaintiff and the College; and (d) the Receiver is authorized and directed to negotiate proposed sale terms with a buyer for some or all of the Collateral, with the written approval of the Plaintiff.

       G.       The Receiver may, if it reaches an agreement with a buyer for any portion of the Collateral which constitutes personal and/or intangible property and Plaintiff consents to the terms and conditions of such sale, file a motion with the Court for the approval of such sale in accordance with the requirements of 28 U.S.C. §§ 2001 and/or 2004, as applicable. Notwithstanding the requirements of 28 U.S.C. § 2001(b), the Receiver shall be allowed to sell personal and/or intangible property through public or private sale(s), upon prior written approval of Plaintiff, and

shall not be restricted by the private sale requirements of 28 U.S.C. §2001(b). Such sale shall be free and clear of all liens, claims and encumbrances against the property, and such liens, claims and encumbrances shall be transferred by operation of law to the proceeds of such sale in the same validity, priority and extent as existed immediately prior to such sale.

H.      Prior to any sale for any portion of the Collateral which constitutes personal and/or intangible property, the Receiver shall file with the court and provide written notice to the Defendants, the Bond Trustee, the Commission and any lienholders of the terms of such sale and they shall have ten (10) days from receipt of such sale notice to object to such sale, provided that the basis for any objection by a Defendant must be: (i) that such sale is not the exercise of the sound business judgment of the Receiver; and/or (ii) that the property proposed to be sold is not Collateral.  If there is no objection to such sale, the sale shall be considered approved by the Court.

I.      The Defendants, and their respective trustees, officers, directors, shareholders, agents, managers, servants, employees, representatives, and attorneys are enjoined from:

i.      collecting, or attempting to collect, the rents, receivables, income, revenues, profits, and Accounts of the College (except those accounts holding the College's endowment funds) and the Collateral from and after the date of entry of the receivership order;

ii.     interfering in any manner with the management of the Collateral;

iii.    interfering in any manner with or hindering efforts to sell the Collateral, except that they may file an objection to sale of the Collateral in this proceeding;

iv.     acting or purporting to act on behalf of the Collateral and/or the Receiver; and/or

v.      removing, transferring, hiding, wasting or dissipating the Collateral, except as specifically authorized in writing by the Receiver.

J.       All persons (other than the Plaintiff, anyone acting on the Plaintiff's behalf or any assignee or successor in interest to the Plaintiff), who have a Claim[2] against the College are prohibited from (a) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding that was or could have been commenced before the commencement of the receivership, or to recover a Claim against the College that arose before the commencement of the receivership; (b) the enforcement, against the Collateral, the College or its real or personal property, of a judgment obtained before the commencement of the receivership; (c) any act to obtain possession of, or to exercise control over, the College's real or personal property; (d) any act to create, perfect, or enforce any lien against the College's real or personal property; (e) any act to create, perfect, or enforce against the College's real or personal property any lien to the extent that such lien secures a Claim that arose before the commencement of the receivership; (f) any act to collect, assess, or recover a Claim against the College that arose before the commencement of the receivership; and (g) the setoff of any debt owing to the College that arose before the commencement of the receivership against any Claim against the College (collectively, a "Pre-Receivership Claim"). However, any and all statutory or contractual limitation periods applicable to any cause of action arising out of or in connection with a Pre-Receivership Claim, to the extent that any such statutory or contractual periods of limitation have not expired as of the date of this Order, shall be hereby tolled during the pendency of this Order. This shall mean that any applicable statutory or contractual periods of

---

2  "Claim" means (a) right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or (b) right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured.

36139513.2
BOASAG2\002407\4900-9916-3961.v4

limitation that have begun to run shall be interrupted and cease running during the pendency of this Order.

K.      Neither the Receiver, nor any management company hired by the Receiver, nor the Plaintiff shall be liable for any obligation of the College that arose prior to the appointment of the Receiver including, without limitation, any contingent or unliquidated obligations, or the advancement of any funds to pay for any expense of maintenance or other liability of the Collateral; provided, however, to the extent the Receiver has sufficient funds, the Receiver shall be responsible for the payment of any taxes, assessments and/or charges which create or would create (as reasonably determined by the Receiver) a lien senior to the Mortgages or any other lien of the Plaintiff on the Collateral.

L.      The Receiver and the Plaintiff shall have no liability to any party for any claims, actions or causes of action arising out of or relating to events or circumstances occurring prior to the appointment of the Receiver. The Receiver and the Plaintiff shall have no liability to any party for any claims, actions or causes of action arising out of the performance of services rendered by third parties on behalf of Receiver, and any liability to which Defendants are currently or may ultimately be exposed under any applicable laws pertaining to the ownership and operation of the Collateral.  The Receiver and Plaintiff shall be indemnified out of the receivership estate for all claims, actions or causes of action, other than those based on intentional or willful misconduct.

M.      Following the Receiver's appointment, neither the Receiver nor the Plaintiff shall be deemed in any way to be an owner of the Collateral, nor shall the Plaintiff be deemed to be a mortgagee in possession with respect to the Collateral. The Receiver shall have no liability for acts or omissions made by or on behalf of the Receiver in his management and liquidation of the Collateral, except for intentional or willful misconduct or violation of an order of this Court.

N.      Neither the Receiver nor the Plaintiff shall be deemed an employee, agent, partner, or joint venturer of the other with respect to the College.

O.      Unless and until removal or resignation, the Receiver shall continue in possession and control of the Collateral during the pendency of Plaintiff's claims in this matter, and during such further period as the Court may order. Neither the Defendants nor anyone associated with them or acting under the Defendants' authority or control shall:

   i.      possess or manage the Collateral in any way;

   ii.     collect, withdraw or transfer, in any way, funds or revenue derived from the Collateral;

   iii.    remove or destroy any Collateral;

   iv.     terminate or cause to be terminated any license, permit, lease, contract or agreement relating to the Collateral or the College; or

   v.      otherwise interfere with Receiver's possession or control of the Collateral.

P.   The Receiver, and its attorney shall be compensated as follows:

   i.      The Receiver's approved hourly rate is $820 per hour. From time to time, the Receiver may utilize the assistance and expertise of persons on the payroll of Aurora Management Partners. These individuals are billed as follows: (a) Philip Slaght - $470 per hour, and (b) Shannon Baker - $360 per hour.

   ii.     The Receiver has selected McDonald Hopkins LLC as his counsel. Shawn M. Riley, at an hourly rate of $1,025 per hour, and Scott N. Opincar, at an hourly rate of $845 per hour, of McDonald Hopkins LLC will be the lead attorneys. They will be assisted by other attorneys and paralegals at McDonald Hopkins LLC as appropriate. Counsel for the Receiver shall also be entitled to reimbursement of all reasonable out of pocket fees, costs and expenses incurred in discharging their duties to the Receiver hereunder, subject to application to and approval by the Court in its discretion.

Q.      The Receiver shall provide counsel to Plaintiff with a monthly invoice, detailing the fees, costs and expenses of the Receiver, the Receiver's counsel and any other professionals hired by the Receiver. Plaintiff's objections to any invoice shall (a) be in writing; (b) be sent to the

Receiver by e-mail within ten (10) calendar days of the date the invoice is e-mailed; and (c)

describe, in detail, the factual basis for each specific entry subject to such objection. If the Receiver

does not receive any timely asserted objection from Plaintiff, it shall be authorized to pay such

invoice on the eleventh (11th) calendar day following the date the invoice is e-mailed to counsel

to the Plaintiff without the need for further court approval. If a timely objection is received from

Plaintiff, the Receiver may pay all fees, costs, and expenses not subject to the objection without

the need for further court approval. All fees, costs, and expenses subject to the objection may be

paid after (x) resolution with the objection confirmed in writing and without the need for court

approval; or (y) entry of an Order from this Court allowing payment of the fees, costs, or expenses.

R.      No proceeds of the Line of Credit or Cash Collateral may be used to: (a) object,

contest or raise any defense to, the validity, perfection, priority, extent or enforceability of the

Plaintiff's claims against the College or the Plaintiff's liens on the College's assets; (b) assert any

claims or defenses against the Plaintiff or its respective agents, affiliates, representatives, attorneys

or advisors; or (c) seek to modify any of the rights granted to the Plaintiff.

S.      The Receiver may at any time, in its sole discretion and business judgment, file a

motion requesting that it be exonerated, discharged, and released from its appointment as Receiver,

and such motion shall be scheduled and heard on an expedited basis, and it shall be grounds for

immediate discharge of Receiver, upon the Receiver's request, if the Receiver is not timely paid,

or the Plaintiff fails to materially comply with its obligations set forth in this Order and the

Liquidation and Funding Agreement.

T.      Neither the Receiver, nor others acting on its behalf will be liable (a) for any

damage, injury, or cause of action arising out of or related to the Collateral, or the execution of

Receiver's duties and powers under this Order; or (b) to any person or entity for the payment, or failure to pay, expenditures arising from the Collateral.

U.      The Receiver, and its employees, agents, and attorneys shall have no personal liability and they shall have no claim asserted against them relating to or arising out of the execution of Receiver's duties and powers under this Order, including without limitation (a) for any damage, injury or cause of action arising out of or relating to the Collateral; (b) the execution of the Receiver's duties or the performance of any duty or obligation hereunder; or (c) in connection with any liabilities, obligations, liens, taxes, or amounts owed to any of the College's creditors because of their actions under the receivership, except for claims due to their gross negligence or willful misconduct.  Nothing in this Order shall grant any rights to trade creditors or general unsecured creditors, whose rights shall be solely determined in accordance with relevant state law. To the extent the Receiver decides to continue the services of any current employees agents or other personnel with respect to the Collateral, neither the Receiver nor any person or entity engaged by the Receiver hereunder shall be liable for any claims of any nature whatsoever of such employees, agents or other personnel that arose prior to the date and time of the entry of the appointment order, which claims include, but are not limited to, liabilities related to unemployment and/or worker's compensation claims.

V.      <u>No Personal Liability</u>.  The Receiver, through and by Aurora Management Partners, is acting solely in its capacity as Receiver and, except as provided by applicable law, no risk, obligation, liability or expense incurred by the receivership estate shall become the personal risk, obligation, liability, or expense of the Receiver or Aurora Management Partners.  Nothing in this Order shall act to modify or waive the Barton Doctrine which is the "general rule that before

suit is brought against a receiver leave of the court by which he was appointed must be obtained."

*Barton v. Barbour*, 104 U.S. 126 (1881).

W.      <u>Receiver's Final Report and Account</u>. As soon as is practicable after the sale or disposition of all or substantially all of the Collateral, the Receiver shall prepare, file, serve, and set for hearing in this Court, its Final Report, detailing the Receivership's income and expenses, the Receiver's and the Receiver's professionals' fees and expenses, and the disposition of the Collateral from the inception of the receivership estate, and containing a summary of the receivership estate's accounting by major categories, of total revenues and total expenditures, the net amount of any surplus or deficit with supporting facts, and evidence to support an order for the distribution of any surplus, or payment of any deficit, in the receivership estate (the "<u>Final Report</u>").  The Final Report shall be deemed approved, the receivership estate deemed terminated, the Receiver discharged, and any bonds cancelled, absent objection from any party to this proceeding filed within twenty (20) days of the Receiver's Final Report without further order of the Court.

X.      <u>Repairs</u>. In the event the Receiver desires to make any repair to any Collateral or pay any unforeseen operating expenses other than those ordinarily and normally incurred in the operation of the business or which are required to address life, health or safety concerns, the Receiver shall notify Plaintiff, directly or through counsel, of the nature and approximate cost of the desired expenditure.  Plaintiff shall respond within five (5) business days of such notice to either authorize such expenditure or to join with the Receiver in a request for a hearing before the Court to determine whether such expenditure should be authorized. The provisions of this paragraph do not apply to emergency repairs, life safety repairs, or repairs required by applicable

city, municipal, or state ordinance or code or as directed by federal, state or local regulatory authorities.

Y.      The Receiver and the Plaintiff shall have no personal liability for any environmental liabilities arising out of or relating to acts or omissions of the College prior to the date of this Order.

Z.      The Receiver shall have no personal liability for any liabilities or claims arising under the Worker Adjustment and Retraining Notification (WARN) Act, except to the extent any such liability arises on account of Receiver's acts or omissions under this Order or applicable law.

AA.     Subject to the prior written consent of Plaintiff, the Receiver may obtain liability insurance to protect the Receiver, its officers, directors, employees, contractors and agents in carrying out its duties hereunder and include the costs of the premium for such liability as a cost and expense of the Receiver as set forth in this Order.

BB.     Further Instructions.  The Receiver or any party may, upon 72 hours' notice to each other (or, in the case of an extreme emergency, on 24-hours' notice), petition the Court for instructions in furtherance of this Order and any further orders the Court may make with respect to the receivership estate.

CC.     Any requirement for posting a bond is hereby waived.

DD.     Retention of Jurisdiction.  This Court shall retain exclusive jurisdiction and supervision of all matters concerning the Receiver, the receivership created hereby, the interpretation and implementation of this Order and the Collateral.

EE.          This is a final judgment on fewer than all of the claims in this proceeding within the meaning of Federal Rule of Civil Procedure 54(b) and may be immediately appealed. There is no just reason for delay.

SIGNED:  _____, 2025

_____
The Honorable  _____