## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| **BANK OF AMERICA, N.A.,** | : | |
| | : | |
| **Plaintiff,** | : | **CASE NO. 1:25-cv-01061** |
| | : | |
| **v.** | : | **Judge Charles Esque Fleming** |
| | : | |
| **THE NOTRE DAME COLLEGE, et al.,** | : | **Magistrate Judge Jonathan D. Greenberg** |
| | : | |
| **Defendants.** | : | |

---

**RECEIVER'S MOTION FOR ENTRY OF AN ORDER (A) AUTHORIZING SALE OF NON-RESIDENTIAL REAL PROPERTY OF THE NOTRE DAME COLLEGE FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES AND INTERESTS; (B) APPROVING SALE PROCEDURES AND MANNER OF NOTICE; (C) SCHEDULING A HEARING TO CONSIDER FINAL APPROVAL OF SALES AND RELATED MATTERS; AND (D) GRANTING RELATED RELIEF**

**NOTICE OF DEADLINE FOR THE FILING OF OBJECTIONS**

---

David M. Baker, the Court-appointed Receiver (the "Receiver") of certain property of Defendant The Notre Dame College (the "College"), by and through counsel, files this motion (the "Motion") for entry of an order substantially in the proposed form attached hereto as **Exhibit A** (the "Bidding Procedures Order"):

(A)   approving the proposed Bidding Procedures attached hereto as **Exhibit B**:

(B)   approving a procedure providing the Receiver the discretion to designate a Stalking Horse Bidder and award Bid Protections in favor of the Stalking Horse Bidder;

(C)   scheduling an Auction and the date and time of the Sale Hearing, along with related deadlines; and

(D)   granting related relief.

37302906.9

And, after further notice and an opportunity to object, entry of an Order in a form to be filed with the Court:

(A)   authorizing the Receiver to sell the Properties (defined below) or a subset thereof and any personal property on an "as is, where is, and with all faults" basis, free and clear of all Interests, with such Interests attaching to sale proceeds with the same force and in the same priority as existed immediately prior to the sale;

(B)   authorizing the Receiver to pay, without further order of the Court, all sale related costs and expenses, including any amounts owing to Keen-Summit Capital Partners LLC, a Colorado limited liability company ("Keen"), the Receiver's proposed real estate broker for the improved real property collectively comprising the campus of the College (collectively, the "Properties"), but specifically excluding those certain single-family residential real properties owned by the College located at: (1) 1887 Lawnway Road, South Euclid, Ohio 44121; (2) 1899 Lawnway Road, South Euclid, Ohio 44121; and (3) 4602 College Road, South Euclid, Ohio 44121, with the net proceeds of the sale paid to Plaintiff; and

(C)   granting related relief.

In support of the requested relief, the Receiver relies upon the Order Appointing Aurora Management Partners and David Baker as Receiver for Certain Property of the Notre Dame College (Docket No. 53) entered on November 5, 2025 (the "Order Appointing Receiver"),[1] the Motion, the Declaration of the Receiver (the "Receiver Declaration") attached hereto as **Exhibit C**, the other files and records in this action, and any other evidence or argument the Court may consider.

**Plaintiff consents to the relief requested in this Motion and has approved the proposed Bidding Procedures and Bidding Procedures Order.**

In further support of the Motion, the Receiver states as follows:

## I.     BACKGROUND

**A.     The Notre Dame College.**

---

[1] Capitalized terms appearing herein that are not otherwise defined shall have the meanings ascribed to such terms in the Order Appointing Receiver.

37302906.9

1. The Sisters of Notre Dame founded the College in 1922 as a Catholic, four-year liberal arts institution for women. The College was a mission-focused, values-based, non-profit private Catholic college. In 2001, the College began accepting men, and enrollment grew dramatically. Residence halls had capacity for approximately 650 students. Student body growth also spurred the creation of new academic and athletic programs and acceptance into the NCAA. The College acquired the former Regina High School (parcel 703-17-028) in August 2011. There is a nunnery house located in the back of the Regina parcel. By April, 2017, the College was in default under the Bond Documents. Like many small higher education institutions across the country, the College faced long-standing challenges related to declining enrollment, a shrinking pool of college-aged students, rising costs and significant debt. Consequently, on or about February 29, 2024, the Board of Trustees of the College issued a press release, announcing that the College would conclude its in-person academic instruction at the end of the Spring Semester 2024. At the conclusion of the Spring Semester in 2024 and after graduation, the College ceased to operate as a college.

2. The College campus consists of approximately 480,952 gross square feet of building area that is comprised of 14 buildings on a total of 48.65 acres. Three of the parcels are single-family residential real properties owned by the College located at: (1) 1887 Lawnway Road, South Euclid, Ohio 44121; (2) 1899 Lawnway Road, South Euclid, Ohio 44121; and (3) 4602 College Road, South Euclid, Ohio 44121. The improvements have original construction dates ranging from 1925-2009. The buildings include classrooms, labs, administration, housing, student services, chapels, theater auditoriums, athletic uses, etc. In addition to the buildings, horizontal improvements and enhancements include approximately 800 parking spaces, roadways, numerous sidewalks, sports fields, and landscaping typical of academic college campuses.

37302906.9

**B.     The Bond and Collateral Documents.**

3.      Plaintiff is the sole owner and holder of $19,090,000 in aggregate original principal amount of State of Ohio Higher Educational Facility Revenue Bonds (the "Bonds") issued on or about August 1, 2008, and reissued on or about February 28, 2017, for the purpose of providing funds to pay costs related to certain educational facilities of the College.

4.      Events of default have occurred and currently exist under the Bond Documents, the SWAP Agreement and the Winddown and Liquidation Agreement.

5.      The obligations of the College under the Bond Documents, the Covenant Agreement, the First Security Agreement, the Winddown and Liquidation Funding Agreement, and the SWAP Transaction are secured by:

(a)     that certain Open-End Mortgage (Leasehold), Assignment of Leases and Rents and Fixture Filing dated August 1, 2008, and recorded in the Cuyahoga County records on August 21, 2008 as Instrument No. 200808210008, as amended by that certain First Amendment and Modification of Open-End Mortgage (Leasehold), Assignment of Leases and Rents and Fixture Filing dated February 23, 2017, and recorded in the Cuyahoga County records on March 6, 2017 as Instrument No. 201703060062 (collectively, the "First Mortgage") granting a first priority lien on and security interest in the real and personal property described therein;

(b)     that certain Open-End Mortgage, Assignment of Rents, Security Agreement and Fixture Filing dated February 28, 2017, and recorded in the Cuyahoga County records on March 6, 2017 as Instrument No. 201703060063 (the "Second Mortgage") granting a first priority lien on and security interest in the real and personal property described therein; and

4

(c)     that certain Open-End Mortgage, Assignment of Rents, Security Agreement and Fixture Filing dated February 28, 2017, and recorded in the Cuyahoga County records on March 6, 2017 as Instrument No. 201703060064 (the "Third Mortgage") granting a first priority lien on and security interest in the real and personal property described therein (the First Mortgage, the Second Mortgage and the Third Mortgage, each as amended, restated, modified, substituted, extended, and renewed from time to time, are collectively, referred to herein as the "Mortgages").

6.     Pursuant to the Mortgages, Plaintiff was granted a first-priority lien on and security interest in the real property known as (a) 4545 College Road, South Euclid, Ohio 44121; (b) 4602 College Road, South Euclid, Ohio 4412; (c) 1899 Lawnway Road, South Euclid, Ohio 44121; (d) 1887 Lawnway Road, South Euclid, Ohio 44121; and (e) 1857 Lawnway Road, South Euclid, Ohio 44121, also known as 1857 South Green Road, South Euclid, Ohio 44121 (collectively, the "Real Property") and all improvements on, fixtures to, and all rents, proceeds and profits of the Real Property, as further set forth in the Mortgages (collectively, the "Real Property Collateral").

7.     Plaintiff perfected its first-priority lien on the College's Personal Property by filing a UCC-1 financing statement with the Ohio Secretary of State on July 1, 2024, recordation number OH0028227103.

8.     Plaintiff retained Chicago Title to provide a Commitment for Title Insurance with Judicial Commitment endorsement (the "Title Evidence") consistent with the requirements of Ohio Revised Code Section 2329.191(C).[2]

---

[2] Ohio Revised Code Section 2329.191(C) provides in pertinent part, "[i]n every action demanding the judicial sale of residential real estate consisting of more than four single-family units or of commercial real estate, the party seeking that judicial sale shall file with the clerk of the court of common pleas within fourteen days after filing the pleadings requesting relief either a preliminary judicial report or a commitment for an owner's fee policy of title insurance on the form approved by the department of insurance that is prepared and issued by a duly licensed title insurance agent on behalf of a licensed title insurance company. . . .If the party seeking the judicial sale files a commitment for an owner's fee policy of title insurance, the commitment shall have an effective date within fourteen days prior to the

9. As of the date of the entry of the Order Appointing Receiver, Plaintiff is owed the principal amount of $17,835,924, plus interest, fees and costs under the Bond Documents and the terms of the Winddown Liquidation and Funding Agreement and/or the Line of Credit.

10. In addition, certain other creditors of the College have asserted liens on the Properties and personal property of the College as enumerated on **Exhibit D** attached hereto. The attached **Exhibit D** includes all liens that have been asserted and of which the Receiver is aware based on a search of UCC filings, the Title Evidence and other sources.

**C. Pre-Receivership Marketing of the Collateral.**

11. The College engaged Hanna Commercial Real Estate on April 9, 2024, as its exclusive broker to market and sell the Real Property. The broker agreement with Hanna Commercial Real Estate expired on May 31, 2025.

12. Starting in June, 2024, the College appointed a chief liquidating officer to maintain the Collateral, collect accounts and market and sell the Collateral, including specifically the Real Property Collateral.

13. Pursuant to the terms of the Liquidation Funding Agreement, any sale of the Real Property was to be closed by October 31, 2024.

14. The marketing efforts resulted in an executed contract for sale, which was to close by December 26, 2024. Unfortunately, the purchaser failed to close the sale, apparently due to a lack of funds.

**D. The Appointment of the Receiver.**

15. Plaintiff filed its Complaint with this Court on May 23, 2025 (Docket No. 1) and its Motion to Appoint Receiver with the consent of the College on May 23, 2025 (Docket No. 7).

---

filing of the complaint or other pleading requesting a judicial sale and shall contain at least all of the information required in divisions (B)(1) to (7) of this section.

On October 24, 2025, the Court entered a minute entry appointing Aurora Management Partners and David Baker as Receiver (the "Minute Entry"). On November 5, 2025, Court entered the Order Appointing Receiver.

16. The Order Appointing Receiver provides in pertinent part that the Receiver may:

"A(x) Subject to the Plaintiff's prior written consent and upon Court approval, negotiate and facilitate the orderly sale or other disposition of the Collateral and to do all acts and things necessary or advisable in connection with such sale or other disposition including, but not limited to, conducting an auction or other disposition of the Collateral, and to hire one or more agents to carry out such disposition;

A(xxii) Without further Court order with the written consent of the Plaintiff, or if Plaintiff does not consent, upon further Court order (after notice and an opportunity to object by Plaintiff), hire or retain any agents (including, without limitation, the Receiver's affiliates) necessary or appropriate to perform any of the duties listed herein without further approval of this Court, including, but not limited to, accountants, attorneys, environmental consultants and personnel, brokers, property managers, maintenance personnel, and/or security personnel;

G. At Receiver's option and discretion, with the prior written consent of Plaintiff and without further order of the Court, the Receiver may engage a broker ("Broker") to market some or all of the Collateral for sale.[3] The Receiver, with the prior written consent of Plaintiff, may enter into one or more transactions for the sale of some or all of the Collateral, subject to approval of this Court after notice to the Commission, the Bond Trustee, governmental entities having jurisdiction over the Collateral, other lienholders of record, and Ohio Attorney General David Yost (the "Ohio AG"). In connection with the marketing and sale of the Collateral: (a) the Receiver is authorized and directed to cause the Collateral to be listed for sale at any price the Receiver determines, in the exercise of its business judgment, to be an appropriate list price, subject to the prior written consent of Plaintiff; (b) the Receiver is authorized and directed to assist in marketing the Collateral for sale; (c) the Receiver shall prepare marketing reports not less than monthly which shall be provided to Plaintiff and the College; and (d) the Receiver is authorized and directed to negotiate proposed sale terms with a buyer for some or all of the Collateral, with the written approval of the Plaintiff.

H. The Receiver may, if it reaches an agreement with a buyer for any portion of the Collateral which constitutes personal and/or intangible property and Plaintiff consents to the terms and conditions of such sale, file a motion with the Court for the approval of such sale in accordance with the requirements of 28 U.S.C. §§ 2001 and/or 2004, as applicable. Notwithstanding the requirements of 28 U.S.C. §

---

[3] At the request of Keen, on December 10, 2025, the Receiver filed an Application (Docket No. 57) to retain Keen as the Receiver's a real estate broker.

37302906.9

2001(b), the Receiver shall be allowed to sell Collateral which constitutes personal and/or intangible property Collateral through public or private sale(s), upon prior written approval of Plaintiff, and shall not be restricted by the private sale requirements of 28 U.S.C. §2001(b). Such sale shall be free and clear of all liens, claims and encumbrances against the property, and such liens, claims and encumbrances shall be transferred by operation of law to the proceeds of such sale in the same validity, priority and extent as existed immediately prior to such sale.

I.    Prior to any sale for any portion of the Collateral which constitutes personal and/or intangible property, the Receiver shall file with the court and provide written notice to the Defendants, the Bond Trustee, the Commission and any lienholders of the terms of such sale and they shall have ten (10) days from receipt of such sale notice to object to such sale, provided that the basis for any objection by a Defendant must be: (i) that such sale is not the exercise of the sound business judgment of the Receiver; and/or (ii) that the property proposed to be sold is not Collateral. If there is no objection to such sale, the sale shall be considered approved by the Court.

J.    The Receiver will provide the Attorney General with at least twenty (20) days advance notice of sale of the Collateral, and copies of any reports filed with the court. The Attorney General will not unreasonably seek to impede or to delay the receivership or the disposition of the Collateral, so long as the Receiver is acting in accordance with and consistent with the terms and conditions of this receivership order.

17.    In accordance with Paragraph G of the Order Appointing Receiver and 28 U.S.C. §§ 2001(a) and 2004, on December 10, 2025, the Receiver filed an Application (Docket No. 57) to retain Keen as a real estate broker on the terms and conditions set forth in the Retention Agreement attached thereto as **Exhibit A**.  on January 5, 2026, the Court entered an Order approving the Application to retain to Keen as a real estate broker (Docket No. 62).  Since being selected, Keen has worked with the Receiver to formulate a marketing plan and to prepare marketing materials.  Keen will engage in an exhaustive effort to solicit bids for the Properties from third parties.

18.    Following the Receiver's assessment of the Collateral, the Receiver has determined in the exercise of his reasonable business judgment that an organized sale process, via public auction of the Properties, will maximize the Properties' value. Receiver Decl. ¶ 8 and 12.  In this

37302906.9

regard, the Receiver has placed the Real Property Collateral into two categories: (i) the Properties, which constitute the improved real property comprising the campus of the College, and (ii) those certain single-family residential real properties owned by the College located at: (1) 1887 Lawnway Road, South Euclid, Ohio 44121; (2) 1899 Lawnway Road, South Euclid, Ohio 44121; and (3) 4602 College Road, South Euclid, Ohio 44121 (collectively, the "Residential Properties"). The Residential Properties will be sold by the Receiver subject to a separate marketing and sale process and are not the subject of this Motion.

## II.    THE PROPOSED BIDDING PROCEDURES

19.    The Receiver seeks approval to sell the Properties or any subset of the Properties, and any personal property included in such bid, to the Qualified Bidder that makes the highest or otherwise best offer for the Properties or any subset of the Properties, and any personal property included in such bid. The Receiver requests that competing bids for the Properties and personal property be governed by the Bidding Procedures attached hereto as **Exhibit B** which, among other things, establish:

a)    the requirements that a Potential Bidder must satisfy to be entitled to participate in the bidding process and become a Qualified Bidder *[Bidding Procedures § 8]*;

b)    the requirements for Qualified Bidders to submit bids and the method and criteria by which such bids become Qualified Bids *[id. §§ 3-6, 8]*;

c)    the deadline by which bids must be submitted *[id. § 1]*;

d)    the Receiver's ability to designate a Stalking Horse Bidder by filing a notice with the Court and providing Bid Protections to the Stalking Horse Bidder not to exceed two percent (2%) in the aggregate of the initial cash purchase price set forth in the Stalking Horse purchase and sale agreement; *[id. § 9]*;

e)    the procedures for conducting the Auction *[id. § 10]*; and

37302906.9

f) various other matters relating to the sale process generally, the Sale Hearing, due diligence, and designation of a Backup Bidder *[id. §§ 1, 2, 7, 11-13]*.

For the sake of brevity, the Bidding Procedures are not repeated verbatim herein but are incorporated by reference for all purposes.

20. Although the Receiver believes that the Bidding Procedures comply with all statutory requirements, to the extent not fully satisfied by the Bidding Procedures, the Receiver requests the Court excuse compliance with 28 U.S.C. §§ 2001 and 2002. The Receiver believes that the waivers of 28 U.S.C. 2001 and 2002, to the extent such statutes are not already satisfied, are necessary and appropriate to achieve the highest sale price for the Properties, pursuant to an auction process that provides the maximum exposure to bidders in the United States. Receiver Decl. ¶ 12.

### III. SELECTION OF THE STALKING HORSE BIDDER AND AWARD OF BID PROTECTIONS

21. On or before April 17, 2026, the Receiver intends to file a notice with the Court either (i) designating the Stalking Horse Bidder entitled to the Bid Protections (the "Stalking Horse Bidder Notice") or (ii) informing the Court that the Receiver has determined not to designate a stalking horse (the "Notice of No Stalking Horse Bidder") and may instead move towards an Auction.

### IV. SCHEDULING AND NOTICE; ENTRY OF FINAL SALE ORDER

22. The Receiver believes in his business judgment, after consultation with Plaintiff and Keen, that the proposed timeline set forth below is sufficient to complete a fair, robust, and open public sale process that will maximize the value received for the Properties and personal property sold to the winning bidder. Receiver Decl. ¶ 8 and 16.

37302906.9

| Event | Deadlines |
|---|---|
| Deadline to Serve Court-Approved Bidding Procedures | Within two (2) Business Days of entry of the Bidding Procedures Order |
| Deadline to File Notice of Stalking Horse Bidder or Notice of No Stalking Horse Bidder | April 17, 2026[4] |
| Deadline to Submit Qualified Bids (the "Bid Deadline") | May 1, 2026 at 5:00 p.m. (Eastern Time). |
| Deadline to Either (1) Notify Qualified Bidders of Auction or (2) Cancel Auction | May 5, 2026 |
| Auction, if held | May 7, 2026 |
| Deadline to File Notice of Successful Bidder and Motion for Final Approval of the Sale | May 11, 2026 |
| Deadline to File Objections to the Sale Motion | May 18, 2026 |
| Reply Deadline to Sale Objections | May 21, 2026 |
| Sale Hearing | May [27, 28, or 29] 2026 at _____ ET[5] |

---

[4] The Receiver reserves the right to modify the Bidding Procedures, the bid increments, and the deadlines in his reasonable business judgment, with the written consent of Plaintiff, Bank of America, N.A., in any manner that will best promote the goals of maximizing the value of the Properties, the bidding process, or impose, at or prior to the Auction, additional customary terms and conditions on the sale, including, without limitation, extending or shortening the deadlines set forth in these Bidding Procedures.

[5] Holding a hearing on one of those dates will allow the parties (i) to close by June 30, 2026, after the 30-day appeal process has run, and (ii) to comply with the 20-day notice requirement to the Ohio Attorney General under Ohio law and paragraph J of the Order Appointing Receiver. Moreover, the Liquidation and Funding Agreement with Plaintiff, Bank of America, N.A., requires a closing of the sale(s) on or before June 30, 2026.

11

37302906.9

| Sale Closing | On or before June 30, 2026 |
|---|---|

### A. Notice of Proposed Bidding Procedures.

23. On the date the notice of this Motion is filed, or within one (1) Business Day thereof, the Receiver will cause this Motion and all exhibits hereto to be served via: (i) first class mail on: (a) Plaintiff; (b) all parties known to the Receiver who have expressed a bona fide interest in purchasing any of the Properties; (c) the Commission, the Bond Trustee, governmental entities having jurisdiction over the Collateral, and the Ohio Attorney General; (d) the service list established in this case (other than the parties listed in (ii) below); and (e) the potential holders of liens, claims, encumbrances and Interests; and (ii) via the Court's ECF filing system (collectively, the "Sale Notice Parties"). The Bidding Procedures also give parties the option to request e-mail service of sale-related pleadings.

### B. Notice of Court-Approved Bidding Procedures.

24. Within two (2) Business Days of the entry of the Bidding Procedures Order, or as soon thereafter as practicable, the Receiver shall cause the Bidding Procedures to be served, by first-class mail, postage prepaid on the Sale Notice Parties. The notice will provide parties with the opportunity to request expedited service via email of future sale-related pleadings.

### C. Post-Auction Supplement.

25. Within six (6) Business Days following the conclusion of the Auction, if held, the Receiver will promptly file with the Court a notice (the "Notice of Successful Bidder") that will inform the Court of the results of the Auction. The Notice of Successful Bidder will identify, among other things: (a) the Successful Bidder as the proposed purchaser of the Properties or the applicable Property to the extent that there are multiple bids for particular

37302906.9

Properties; (b) the form of Successful Bidder purchase agreement; (c) the amount and form of consideration to be paid by the Successful Bidder for the subject Property; (d) the liabilities to be assumed by the Successful Bidder, if any, and (e) the Contracts to be assigned to the Successful Bidder in connection with the sale, if any. The Notice of Successful Bidder will also include similar information relating to the Backup Bidder and the Backup Bid. In addition, the Receiver will attach to the Notice of Successful Bidder (i) a copy of the Successful Bidder Purchase and Sale Agreement, and (ii) any additional information or documentation relevant to the Successful Bid. The Notice of Successful Bidder will be served via (i) first class mail on the Sale Notice Parties and (ii) the Court's ECF filing system.

**D.      Sale Hearing; Entry of the Sale Order.**

26.      The Receiver requests that this Court set the Sale Hearing for a date and time on May 27, 28, or 29, 2026. See, footnote 5. At the Sale Hearing, the Receiver intends to seek entry of the Sale Order (a) approving the sale on an "as is, where is, and with all faults" basis free and clear of all liens, claims, encumbrances and Interests to the fullest extent permitted by law, with such liens, claims, encumbrances and Interests to attach to the cash proceeds of the sale with the same extent and with the same validity and priority as exists at the time of the sale. In addition, the Sale Order will have findings that the sale is not a fraudulent conveyance, the parties to the transaction acted in good faith and at arms-length, and the Receiver provided adequate notice for these and the other terms and conditions of the bidding, Auction, and sale process.

27.      The Receiver requests to distribute the net proceeds of the sale, after payment of all customary closing costs, expenses, and senior liens, to the Plaintiff in partial satisfaction of its liens on the Properties.

37302906.9

28.     The Receiver further requests that the Court retain jurisdiction to hear and determine all matters arising from the interpretation or implementation of the Bidding Procedures, Bidding Procedures Order, and Sale Order, and that the Receiver shall not be required to seek authorization from any other jurisdiction with respect to the relief granted in such orders.

29.     Finally, the Receiver requests authority to execute any documents on behalf of the College to the extent necessary to complete the sale of any of the Properties that are receivership property.

## V.      **LEGAL AUTHORITY**

30.     Pursuant to 28 U.S.C. §§ 2001, 2002, and 2004, a receiver may sell property of an estate, consisting of real and personal property subject to the approval of the court after a public sale.  This Court's Order Appointing Receiver grants the Receiver the authority to market the Properties for sale, and subject to Court approval, to execute documents, instruments and resolutions in connection with a sale of the Properties and the personal property.

31.     In the present case, the College is no longer operating or conducting any business. Consequently, the only way to generate meaningful funds for payment of the Obligations owed to Plaintiff and possibly other creditors of the College is to sell the Properties and personal property for fair value.  These circumstances constitute a sound business purpose for the sale of the Properties and the personal property by the Receiver.  The Receiver believes that the proposed Bidding Procedures and Auction process will result in a purchase price that reasonably reflects the fair value of the Properties and personal property to be sold, considering all of the circumstances. The Receiver also believes that the Bidding Procedures and Auction process are structured to create an opportunity for competitive bidding, with public notices being published in one or more newspapers in accordance with 28 U.S.C. § 2002 at least once a week for four consecutive weeks,

14

and with additional extensive marketing efforts undertaken by the Receiver and Keen to ensure that potential buyers are given an ample opportunity to submit a Qualified Bid for the Properties.

32. The Court's authority to impose and administer this receivership is derived from its inherent powers as a court of equity. *See S.E.C. v. Forex Asset Mgmt., LLC*, 242 F.3d 325, 331 (5th Cir. 2001); *U.S. v. Durham*, 86 F.3d 70, 72 (5th Cir. 1996); *see also* Fed. R. Civ. P. 66 ("The practice in the administration of estate by receivers . . . shall be in accordance with the practice heretofore followed in the courts of the United States or as provided in rules promulgated by the district court."). A federal court exercises "broad powers and wide discretion" in crafting relief in an equitable receivership proceeding. *See S.E.C. v. Basic Energy & Affiliated Res., Inc.*, 273 F.3d 657, 668 (6th Cir. 2001).

33. A court imposing a receivership assumes custody and control of all assets and property of the receivership, and the court has broad equitable authority to issue all orders necessary for the proper administration of the receivership estate. *See S.E.C. v. Credit Bancorp Ltd.*, 290 F.3d 80, 82-83 (2nd Cir. 2002); *S.E.C. v. Wencke*, 622 F.2d 1363, 1370 (9th Cir. 1980).

34. The Court may enter such orders as may be appropriate and necessary for a receiver to fulfill his duty to preserve and maintain the property and funds within the receivership estate. *See, e.g., Official Comm. of Unsecured Creditors of Worldcom, Inc. v. S.E.C.*, 467 F.3d 73, 81 (2nd Cir. 2006); *S.E.C. v. Fischbach Corp.*, 133 F.3d 170, 175 (2nd Cir. 1997).

35. The goal of a receiver charged with liquidating assets is to obtain the best value for the estate available under the circumstances. *Fleet Nat'l Bank v. H& D Entm't, Inc.*, 926 F. Supp. 226, 239-40 (D.C. Mass. 1996) (citing *Jackson v. Smith*, 254 U.S. 586 (1921)). The paramount goal in any proposed sale of property of the estate is to maximize the proceeds received by the estate. *See, e.g., Four B. Corp. v. Food Barn Stores, Inc.*, 107 F.3d 558, 564-65 (8th Cir. 1997).

37302906.9

Moreover, courts have recognized that a receiver's business judgment is entitled to significant deference when selecting the appropriate methods to achieve this goal. *See, e.g., Golden Pac. Bancorp v. F.D.IC.*, 2002 WL 31875395 (S.D.N.Y. 2002); *aff'd sub nom, Golden Pac. Bancorp. v. F.D.I.C.*, 375 F.3d 196 (2nd Cir. 2004) (recognizing receivers are afforded deference in corporate decision making); *In re JFD Enter., Inc.*, 2000 WL 560189, *5 (1st Cir. 2000) ("The trustee has ample discretion to administer the estate, including authority to conduct public or private sales of estate property. Courts have much discretion on whether to approve proposed sales, but the trustee's business judgment is subject to great judicial deference.") (internal citations omitted).

36.     This Court's broad authority over a receivership estate includes the equitable power "to sell property free of liens, transferring the lien to the proceeds." *Seaboard Natl. Bank v. Rogers Milk Prod. Co.*, 21 F.2d 414, 416 (2nd Cir. 1927); *see also First Natl. Bank v. Shedd*, 121 U.S. 74 (1887) (affirming the sale of railroad property deteriorating in value free and clear of liens); *F.T.C. v. Trudeau*, No. 03-C-3904 (N.D. Ill. May 27, 2014) (order approving sale of receivership assets free and clear of encumbrances, liabilities, and claims); *S.E.C. v. Pearson*, No. 14 C 3785 (N.D. Ill. June 9, 2014) (order approving sale liens, claims, encumbrances, and interests); *Quilling v. Trade Partners, Inc.*, 2007 WL 296211 (W.D. Mich. 2007) (approving receiver's sale of property free and clear of all liens and encumbrances); *Stoder v. Am. Crushing & Recycling*, LLC, 2006 WL 438615 (Conn. Super. Ct. 2006) (granting receiver's motion to sell property free and clear of liens); *Parks v. Carlisle Clay Prod. Co. of Carlisle*, 276 N.W. 591 (Iowa 1937) (allowing a receiver to sell the assets of the corporation free of liens and encumbrances). Under Local Rule 66.1, the Court is to administer receivership estates "similar to that in bankruptcy cases." It is a bedrock principle of bankruptcy law that bankruptcy courts (which are courts of equity like courts

37302906.9

administering receivership estates) may authorize the sale of estate assets free and clear of all liens and interests. *See* 11 U.S.C. § 363.

37. In circumstances similar to those in this Receivership case, federal bankruptcy courts typically consider the following four factors in determining whether to approve a proposed sale under title 11 of the United States Code:

    (a)    whether a sound business justification exists for the sale;

    (b)    whether adequate and reasonable notice of the sale was given to interested parties;

    (c)    whether the sale will produce a fair and reasonable price for the property; and

    (d)    whether the parties have acted in good faith.

In re Delaware & Hudson Ry. Co., 124 B.R. 169, 176 (D. Del. 1991).

38. Deference to an appointed fiduciary's business judgment also permits federal courts to authorize a receiver to adjust approved sale terms or procedures without further order of the court. *See, e.g., United States v. Spencer,* No. 4:20-CV-00556(GKF)(CDL), 2021 WL 5114315, at *1 (N.D. Okla. Sept. 23, 2021) (permitting adjustment of minimum bid in public sale of real property under 28 U.S.C. § 2001, if necessary, without further permission of the court). Such flexibility is typical in bidding and sale procedures approved by bankruptcy courts in connection with asset sales conducted to pursuant 11 U.S.C. § 363 ("363 sales"), and district courts recognize that 363 sales provide instructive guidance in evaluating judicial sales of receivership property.

39. Finally, an auction process need not permit unrestricted public participation to qualify as a "public sale" under Section 2001(a) — the "terms and conditions" directed by the court can limit auction participation to bidders that meet certain requirements. *See, e.g., S.E.C. v. Champion-Cain,* No. 3:19-CV-1628-(LAB)(AHG), 2020 WL 2309270, at *3 (S.D. Cal. May 8,

17

2020) (approving auction with minimum bid, good faith deposit, and proof of fund requirements and pre-auction bid deadline as "public sale" under 28 U.S.C. § 2001(a)).

### VI.     APPROVAL OF BIDDING PROCEDURES

40.     The Order Appointing Receiver empowers the Receiver, subject to further Court order, to sell the Collateral constituting receivership property as he deems prudent outside the ordinary course of business free and clear of all liens, claims, encumbrances and Interests, with such liens, claims, encumbrances and Interests attaching to the applicable cash sale proceeds with the same extent and with the same validity and priority as exists at the time of the sale. Pursuant to 28 U.S.C. §§ 2001 and 2002, such sales outside the ordinary course of business may be by private sale or public auction. The Receiver, in the exercise of his business judgment, has determined that the sale of the Properties and personal property through a competitive public auction in accordance with the Bidding Procedures will enable him to obtain the highest and best offer for the Properties and personal property and is in the best interests of stakeholders. Receiver Decl. ¶ 8, 12 and 16.

41.     The Bidding Procedures, including the procedures regarding the proposed Auction, satisfy the "public sale" requirements set forth in 28 U.S.C. § 2001(a). All prospective buyers that sign an NDA will have an opportunity to conduct due diligence and submit a Qualified Bid by the Bid Deadline, and the requirements for Auction participation are consistent with those approved by other courts in the context of public judicial sales (e.g., proof of funds, a good faith deposit, and proof of due authorization). Additionally, McDonald Hopkins LLC's office located at 600 Superior Avenue, East, Suite 2100, Cleveland, Ohio 44114 (i.e., the proposed location of the Auction) is in the district wherein each of the Properties is located and where the Receiver was appointed), as required by 28 U.S.C. § 2001(a).

37302906.9

42. The Receiver, through Keen, will also publicize the sale via local periodicals in compliance with 28 U.S.C. § 2002 as publications of general circulation in Cuyahoga County, Ohio, the county in which each of the Properties is located. Receiver Decl. ¶ 14. This publication will be in addition to Keen's extensive marketing process. Through this process, the Receiver is confident that the parties most interested and capable of closing the proposed transaction will be contacted, have an opportunity to sign an NDA, and perform diligence in relation to the sale. *Id.*

43. If Keen's marketing efforts and publication notice of the sale, including the four weekly public notices published in accordance with 28 U.S.C. § 2002, do not attract any Qualified Bidders other than the Stalking Horse Bidder by the Bid Deadline, the Receiver need not proceed with the scheduled Auction for the sale to the Stalking Horse Bidder to constitute a "public sale."

40. In sum, the Receiver believes that the Bidding Procedures will encourage bidding for the Properties and personal property and are consistent with the relevant standards governing auction proceedings and bidding incentives in receivership proceedings. Receiver Decl. ¶9, 10, 11, 12, and 13. Accordingly, the proposed Bidding Procedures are reasonable, appropriate, and within the Receiver's sound business judgment.

## VII. APPROVAL OF BID PROTECTIONS

44. Under 28 U.S.C. § 2001(a), realty in the possession of an appointed receiver is subject to a public sale process "upon such terms and conditions as the court directs." 28 U.S.C. § 2001. In other words, the Court has broad discretion to approve the precise terms, conditions, and timeline of a federal receiver's proposed sale of receivership property. It is a well settled rule that, except in cases of abuse, appellate courts will not disturb the exercise of a district court's discretion in setting the terms and conditions for a judicial sale and the confirmation thereof.). *See, United States v. Heasley,* 283 F.2d 422, 426 (8th Cir. 1960) ("In general, the rule

37302906.9

in federal courts is well settled that the matter of confirming a judicial sale rests in the sound judicial discretion of the trial court and this discretion will not be disturbed on appeal except in cases of its abuse.").

45.     Here, to the extent that a Stalking Horse Bidder is selected by the Receiver, the Receiver seeks to provide it with Bid Protections not to exceed 2% in the aggregate of the purchase price set forth in the applicable purchase and sale agreement.  The Bid Protections are an incentive to the Stalking Horse Bidder to submit a binding bid, thus establishing a minimum recovery to the receivership estate while Keen continues with the marketing and auction process.  The Receiver believes, in his business judgment, that designating the Stalking Horse Bidder and awarding the Bid Protections will help maximize the value received for the Properties.  Receiver Decl. ¶ 11.

## VIII.  <u>NOTICE OF THIS MOTION</u>

46.     Notice of this motion will been served via (i) first class mail on: (a) Plaintiff; (b) all parties known to the Receiver who have expressed a bona fide interest in purchasing any of the Properties; (c) the Commission, the Bond Trustee, governmental entities having jurisdiction over the Collateral, and the Ohio Attorney General (d) the service list established in this case (other than the parties listed in (ii) below); and (e) the potential holders of liens, encumbrances and Interests; and (ii) via the Court's ECF filing system.  The Receiver submits that no further notice is required.

## IX.     <u>NO PRIOR REQUEST</u>

47.     No previous request for the relief sought herein has been made to this or any other Court.

37302906.9

## X. NOTICE AND DEADLINE TO FILE AN OBJECTION

48. **PLEASE TAKE NOTICE that this Motion is filed for the purpose of providing information to the parties and other persons interested in these proceedings. ANY OBJECTION TO THIS MOTION MUST BE FILED WITH THE COURT WITHIN FOURTEEN (14) DAYS FROM THE DATE OF SERVICE AS SET FORTH ON THE CERTIFICATE OF SERVICE (THE "OBJECTION DEADLINE"). IF NO RESPONSE OR OBJECTION IS TIMELY FILED, THE COURT MAY GRANT THE RELIEF REQUESTED IN THIS MOTION WITHOUT FURTHER NOTICE OR A HEARING.**

37302906.9

WHEREFORE, for all the reasons set forth above, the Receiver respectfully submits that good cause exists for the Court to enter an order in the form attached as **Exhibit A** approving the Bidding Procedures, scheduling a hearing to consider the final approval of the sale(s) of the Properties and related matters, and granting the Receiver such other and further relief to which he may be justly entitled.

Dated: January 15, 2026

Respectfully submitted,

/s/ Scott N. Opincar
Shawn M. Riley (0037235)
Scott N. Opincar (0064027)
McDonald Hopkins LLC
600 Superior Avenue, East, Suite 2100
Cleveland, Ohio 44114
Telephone: (216) 348-5753
Facsimile: (216) 348-5474
Email: sriley@mcdonaldhopkins.com
        sopincar@mcdonaldhopkins.com

Counsel to the Receiver, David M. Baker

37302906.9

## CERTIFICATE OF SERVICE

I hereby certify that on January 15, 2026, a true and correct copy of the foregoing Motion was served via the Court's ECF system on all ECF participants registered in the case at the email address registered with the Court and via first-class mail, postage prepaid, where the party is not registered in ECF in this case.

| | |
|---|---|
| The Notre Dame College<br>c/o Inglewood Associates LLC<br>9242 Headlands Road<br>Mentor, Ohio 44060<br>Attn: Sam Steinhouse<br><br>The Notre Dame College<br>c/o Statutory Agent<br>John Smetanka<br>4545 College Road<br>South Euclid, Ohio 44121<br><br>John Smetanka<br>809 Everview Lane<br>Derry, Pennsylvania 15627<br><br>Ohio Higher Educational Facility Commission<br>25 South Front Street<br>Columbus, OH 43215<br><br>Ohio Attorney General's Office<br>30 East Broad Street, 25th Floor<br>Columbus, Ohio 43215<br>Attn.: Daniel Fausey, Section Chief Charitable Law<br><br>Ohio Attorney General's Office<br>Charitable Law Section<br>30 East Broad Street, 25th Floor<br>Columbus, Ohio 43215<br>Attn.: Tracy Q Wendt | Cuyahoga County Treasurer<br>2079 E. 9th St.<br>Cleveland 44115<br><br>Cuyahoga County Department of Law<br>2079 East 9th Street<br>Cleveland, OH 44115<br>Attn.: Law Director<br><br>City of Cleveland Division of Water<br>1201 Lakeside Avenue<br>Cleveland, Ohio 44114<br><br>Enbridge Gas Ohio<br>f/k/a East Ohio Gas<br>1201 E 55th St<br>Cleveland, OH 44103<br><br>City of South Euclid Law Department<br>1349 South Green Road<br>South Euclid, Ohio 44121<br>Attn.: Michael Lograsso<br><br>City of South Euclid<br>Director of Planning & Development<br>1349 South Green Road<br>South Euclid, Ohio 44121<br>Attn.: Michael Love<br><br>Internal Revenue Service<br>Centralized Insolvency Operation<br>2970 Market Street<br>Mail Stop 5-Q30-133<br>Philadelphia, PA 19104-5016 |

37302906.9

| | |
|---|---|
| U.S. Bank Trust Company, National Association<br>c/o David A. Schlabach, Vice President<br>U.S. Bank Global Corporate Trust<br>6000 Lombardo Center, 1st Floor<br>Cleveland, Ohio 44131<br><br>Tim Collins, Esq.<br>1282 West 58th Street<br>Cleveland, Ohio 44102<br>*State Court Receiver*<br><br>Peter J. Corrigan<br>3933 Kings Mill Run<br>Rocky River, Ohio 44116<br><br>Justin Tisdale<br>4321 Ardmore Road<br>South Euclid, Ohio 44121<br><br>Len Barker<br>10690 Locust Grove Drive<br>Chardon, Ohio 44024<br><br>Joseph Carney, Esq.<br>1540 Peach Drive<br>Avon, Ohio 40118<br><br>Colleen Moran O'Neil, Esq.<br>Calfee Building<br>1405 East Sixth Street<br>Cleveland, Ohio 44114<br><br>U.S. Bank Equipment Finance, a division of U.S.<br>Bank National Association<br>1310 Madrid Street<br>Marshall, MN 56258<br><br>Crestmark Equipment Finance, Inc.<br>5480 Corporate Drive<br>Suite 350<br>Troy, MI 48098<br><br>CISCO SYSTEMS CAPITAL CORPORATION<br>170 W. Tasman Drive<br>MS SJ13-3<br>San Jose, CA 95134 | Bank of America, N.A.<br>1 Financial Plaza<br>Providence, RI 02903<br>Mail Stop: RI1-537-03-02<br>Attn: Kelly Werbecki, Senior Vice<br>President<br><br>Matthew Bordwin<br>Keen-Summit Capital Partners LLC<br>1 Huntington Quadrangle, Suite 2C04<br>Melville, NY 11747<br><br>Elliott M. Smith, Esq.<br>Benesch Friedlander Coplan & Aronoff<br>LLP<br>127 Public Square, Suite 4900<br>Cleveland, Ohio 44114<br><br>John C. Cannizzaro, Esq.<br>Ice Miller LLP<br>250 West Street, Suite 700<br>Columbus, Ohio 43215-7509<br><br>Jon J. Pinney, Esq.<br>KJK<br>One Cleveland Center<br>13795 East Ninth Street, 29th Floor<br>Cleveland, Ohio 44114<br><br>Linda M. Green, Esq.<br>Underwriting Counsel<br>Chicago Title Insurance Company<br>1111 Superior Avenue, Suite 602<br>Cleveland, Ohio 44114<br><br>Hanna Commercial, LLC<br>1350 Euclid Avenue, Suite 700<br>Cleveland, Ohio 44115<br><br>Bank of America, N.A.<br>One Financial Plaza,<br>RI1-537-03<br>Providence, RI 02891 |

37302906.9

| | |
|---|---|
| JERRY PATE TURF & IRRIGATION INC<br>301 Schubert Dr.<br>Pensacola, FL 32504<br><br>All For You Janitorial Inc.<br>304 Hidden Glen Trl.<br>Chardon, Ohio 44024<br><br>Schindler Elevator Corporation<br>18013 Cleveland Parkway Drive<br>Suite 140<br>Cleveland, Ohio 44135<br><br>HC Building Services<br>1350 Euclid Avenue, #700<br>Cleveland, Ohio 44115<br><br>REPUBLIC SERVICES<br>8123 Jones Rd.<br>Cleveland OH 44105<br><br>Paladin Protective Systems Inc.<br>7680 Hub Parkway<br>Valley View, OH 44125<br><br>Northeast Ohio Regional Sewer District<br>PO Box 94550<br>Cleveland, Ohio 44101-4550<br><br>U.S. Bank National Association<br>60 Livingston Avenue, EP-MN-WS3C<br>St. Paul, Minnesota 55107<br><br>Bank of America, N.A.<br>Bank of America Center, One Commercial Place, 3rd Floor<br>Norfolk, Virginia 23606<br>Attention: Kevin Larkin<br><br>Bank of America, N.A.<br>Special Assets Group<br>One Financial Plaza<br>Providence, Rhode Island 02903 | The Illuminating Company<br>PO Box 371422<br>Pittsburgh, Pennsylvania 15250-7422<br><br>Xcalibre Protective Services<br>33100 Lakeland Blvd<br>Eastlake, Ohio 44095<br><br>Ward Interiors Inc.<br>698 Echo Drive<br>Mayfield Village, Ohio 44040<br><br>Chores Unlimited, Inc<br>4889 Neo Pkwy<br>Garfield Heights, OH 44128<br><br>EMSCO – STRONGSVILLE<br>22350 Royalton Road<br>Strongsville, Ohio 44149<br><br>Roberts Roofing Company<br>1799 Joseph Lloyd Parkway<br>Willoughby, OH 44094<br><br>Enbridge Gas Ohio<br>PO Box 26785<br>Richmond, VA 23261-6785<br><br>Ohio Educational Facility Commission<br>30 East Broad Street, 36th Floor<br>Columbus, Ohio 43215<br>Attention: Chairman<br><br>The East Ohio Gas Company<br>1201 East 55th Street,<br>Cleveland, Ohio 44103<br>Attention: Land Services<br><br>Bank of America, N.A.<br>Special Assets Group,<br>One Financial Plaza<br>Mailstop: RI1-537-09-01<br>Providence, Rhode Island 02903 |

37302906.9

/s/ Scott N. Opincar
Scott N. Opincar (0064027)
Attorney for David M. Baker, Receiver

26

37302906.9